**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **JANE DOE**<br><br>　　　　**Plaintiff,**<br><br>vs.<br><br>**MARK A. GIPSON**<br><br>　　　　**Defendant.** | Civil Action No. 1:23-cv-00463-RP |

**PLAINTIFF JANE DOE'S OMNIBUS RESPONSES TO DEFENDANT'S: 1) MOTIONS FOR DISCLOSURE OF PLAINTIFF'S REAL NAME AND PROFESSIONAL ALIASES (DKTS. 36, 40, 49, 59); 2) MOTION TO DISMISS FOR IMPROPER JURISDICTION (DKT. 37); 3) MOTIONS TO CONTEST THE TRO (DKTS. 43, 46, 57); AND 4) MOTION <u>FOR AN OPINION ON AI ARTWORK (DKT. 39)</u>**

**Table of Contents**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT..........................................................................................................................1

    A. The Clerk's Entry of Default Prevents Mr. Gipson from Filing Any Motions ................................................................................................................1

        1) Mr. Gipson Has No Right to File Any Document Other Than A Motion to Vacate the Clerk's Entry of Default............................................1

        2) The Court Should Not Vacate the Clerk's Entry of Default Against Mr. Gipson ...................................................................................................3

    B. Mr. Gipson Should Be Granted No Leniency Due To His "Pro Se" Status ............4

    C. Mr. Gipson's Motion(s) to Disclose Plaintiff' Real Name Should Be Denied ......................................................................................................................7

    D. Mr. Gipson's Motion to Dismiss for Improper Jurisdiction Should Be Denied ......................................................................................................................9

    E. Mr. Gipson's Motion(s) to Contest Emergency TRO And Counter Motion For A Preliminary Injunction Against Plaintiff Should Be Denied.......................10

    F. Mr. Gipson's Motion for Opinion on AI Artwork Should Be Denied ..................12

III. CONCLUSION....................................................................................................................12

# Table of Authorities

## CASES

*Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113–114 (1948)........................ 12

*Doe v. CoreCivic, Inc.*, N. 4:20-CV-01828, 2020 WL 3640058, at *1 (S.D. Tex. July 6, 2020)... 8

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) ................................................................................. 4

*J&J Sports Productions, Inc. v. Pei Chuan Kuo,* 2007 WL 4116209 at *3 (W.D. Tex. 2007)...... 1

*Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000).................................................................. 3

*Matter of Dierschke,* 975 F.2d 181, 183 (5th Cir. 1992) ............................................................... 3

*New York Life Insurance Company v. Alvin Brown and Leslie Brown,* 84 F.3d 137, 143 (5th Cir. 1996)........................................................................................................................................ 2

*Strauss v. Lake City Credit*, 2020 WL 2174461, at *1 (E.D. Tex. Apr. 6, 2020) (emphasis added) ................................................................................................................................................. 2

## STATUTES

28 U.S.C. § 1331............................................................................................................................. 9

28 U.S.C. § 1332(a) ....................................................................................................................... 9

## RULES

Tex. Civ. Prac. & Rem. Code § 98B.006...................................................................................... 10

**PLAINTIFF JANE DOE ("Plaintiff")**, by and through her attorneys, respectfully submits this Omnibus Response to Defendant's: 1) Motions for Disclosure of Plaintiff's Real Name and Professional Aliases (Dkts. 36, 40, 49, 59); 2) Motion to Dismiss for Improper Jurisdiction (Dkt. 37); 3) Motions to Contest the TROs (Dkts. 43, 46, 57); and 4) Motion for an Opinion on AI Artwork (Dkt. 39).

## I.   INTRODUCTION

As discussed in Plaintiff's motion for clarification (Dkt. 54), since released from custody, Mr. Gipson has serially filed more than a dozen procedurally deficient (as well as legally and factually erroneous) motions and pleadings, in some instances filing the same motions or pleadings two to three times. While it is unclear which, if any, of Mr. Gipson's motions and pleadings have been accepted by the Court and thus require a response, Plaintiff submits this omnibus response to certain of Mr. Gipson's motions out of an abundance of caution.

As discussed further below, all of the relief Mr. Gipson has requested should be denied because the clerk has already entered a Default against Mr. Gipson, and that Default was willful. Moreover, even if Mr. Gipson had not abandoned his right to seek any of the requested relief through his willful disregard of the civil process, none of the motions or pleadings Mr. Gipson has serially filed provide any legal or factual bases for granting the requested relief.

Plaintiff thus respectfully requests that the Court deny each of Mr. Gipson's motions.

## II.  ARGUMENT

### A.   The Clerk's Entry of Default Prevents Mr. Gipson from Filing Any Motions

#### 1)   Mr. Gipson Has No Right to File Any Document Other Than A Motion to Vacate the Clerk's Entry of Default.

First, Mr. Gipson's motion should be denied because he has no right to file any document other than a motion to vacate the Clerk's Entry of Default. *See, e.g*, *J&J Sports Productions, Inc.*

1

*v. Pei Chuan Kuo,* 2007 WL 4116209 at *3 (W.D. Tex. 2007) ("The record shows that the Clerk made an entry of default as to [Defendants] on September 17, 2001. [Defendants] therefore had no right to file *any document other than motion to set aside the entry of default.* The Court will accordingly direct the Clerk to strike their Answer from the record in this cause.") (emphasis added). As the Fifth Circuit has explained, a party who has defaulted must succeed in setting aside the default before they can file motions that go to the merits of the case. *New York Life Insurance Company v. Alvin Brown and Leslie Brown,* 84 F.3d 137, 143 (5th Cir. 1996); *see also Strauss v. Lake City Credit*, 2020 WL 2174461, at *1 (E.D. Tex. Apr. 6, 2020) (denying motion to dismiss where *pro se* litigant had not vacated the Clerk's Entry of Default).[1]  Moreover, not only is Mr. Gipson "prohibited from attacking the merits of a claim after a default until that default has been set aside," but all "Rule 12(b) motions are waived after a defendant has had an entry of default entered against him." *Wilhite*, 2011 WL 13254064, at *4.

Here, Mr. Gipson was timely served the Complaint and accompanying pleadings on April 26, 2023. *See* Dkt. 17 (Summons Returned Executed). However, Mr. Gipson chose to ignore the Complaint (along with every other pleading filed by Plaintiff, and every order from this Court). Due to Mr. Gipson's refusal to participate in this litigation, on May 26, 2023, the clerk entered an entry of Default against Mr. Gipson. *See* Dkt. 26. Thus, under Fifth Circuit law, Mr. Gipson lacks the right to seek the relief requested until he moves for and succeeds in setting aside the entry of default. *See J&J Sports Productions, Inc.,* 2007 WL 4116209 at *3.

---

[1] *See also Wilhite v. Reg'l Employers' Assurance Leagues VEBA Tr.*, 2011 WL 13254064, at *4 (S.D. Tex. Nov. 15, 2011); *Twist and Shout Music v. Longneck Xpress, N.P.,* 441 F. Supp. 2d 782, 783 (E.D. Tex. 2006).

2

2)   The Court Should Not Vacate the Clerk's Entry of Default Against Mr. Gipson

Second, because Mr. Gipson's default was willful, the Court should not set aside the entry of default against Mr. Gipson. In determining whether or not to set aside an entry of default, courts must consider three factors: (i) whether the default was willful; (ii) whether setting it aside would prejudice the adversary, and (iii) whether a meritorious defense is presented. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). Importantly, "a finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" *Id.* (quotation omitted); *see also Matter of Dierschke,* 975 F.2d 181, 183 (5th Cir. 1992) (affirming entry of default judgment where the defendant's "failure to answer was intentional . . . [and] the plain and simple fact is that [the defendant] chose to play games with this court").

As discussed above, Mr. Gipson was timely served the Complaint and accompanying pleadings on April 26, 2023. *See* Dkt. 17 (Summons Returned Executed). After Mr. Gipson failed to appear for the May 4, 2023 hearing, he was again properly served via personal service with this Court's order to appear and show cause on May 5, 2023. Dkt. 19 (proof of service including photographs of Mr. Gipson being served). But Mr. Gipson again refused to participate in this litigation, and ignored the Court's order to appear, resulting in this Court issuing an order of contempt and a bench warrant for his arrest. Dkts. 23 – 24. Thus, Mr. Gipson not only ignored his obligations to respond to the Complaint, he also ignored the Court's initial temporary restraining order, and the Court's subsequent order to appear.

Moreover, Mr. Gipson's willful disregard of the civil process has only escalated. As discussed in Plaintiff's second emergency request for a temporary restraining order, on May 26, 2023, Plaintiff discovered that Mr. Gipson had created ***fifteen*** websites dedicated to uploading over ***four-hundred*** of her sexually explicit photographs. Dkt. 29-1 (Second TRO). The fact Mr.

3

Gipson retaliated against Plaintiff is additional evidence that he knew of this lawsuit, and thus that his default was willful. Indeed, it was not until after Mr. Gipson was arrested and physically brought before the court in chains that he chose to file any response to the Complaint and corresponding motions.

In short, Mr. Gipson was properly served the Complaint, but chose to willfully ignore the lawsuit against him until Federal Marshals forcibly brought him to Court to face the consequences of his actions. But a defendant cannot ignore the civil process until they are forcibly dragged into Court to respond, and then decide that it is now an opportune time to file responsive pleadings and motions. That time has passed, as Fifth Circuit law precludes setting aside defaults for individuals like Mr. Gipson. *Matter of Dierschke,* 975 F.2d at 183.

### B. Mr. Gipson Should Be Granted No Leniency Due To His "Pro Se" Status

As discussed in Plaintiff's Motion to Strike Mr. Gipson's falsified evidence (Dkt. 45-2), Plaintiff understands that "*pro se*" litigants are often given more leniency than litigants with counsel. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520 (1972) (explaining that *pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers."). However Plaintiff respectfully submits that Mr. Gipson should be given **_no_** leniency due to his *pro se* status. While Mr. Gipson represented to the Court that he does not have the funds to afford an attorney, this is plainly wrong. For example, on June 9, 2023, Mr. Gipson sent an email to all pro bono counsel from Latham & Watkins who has appeared in this matter on behalf of Plaintiff, asserting that he intended to sue Latham & Watkins for "$10,000,000" for the "severe emotional distress" caused by this lawsuit. *See* Dkt. 45-5. Notably, Mr. Gipson also CCed the Court's deputy (Ms. Julie Golden), along with several other individuals, including a Mr. Eric Harron. *See Id.* at 1. In response to this email chain, Mr. Harron responded that:

4

> I'm not sure why I'm CCed on this or the previous email. I did represent Mr. Gipson approximately 4 years ago on another matter. He approached my office about this matter, and I told him it was not something I would be willing to take on. My office no longer represents him in any capacity.

*See Id*. at 1.

In short, Mr. Gipson sought assistance from at least one attorney to represent him in this matter and that attorney declined to represent him. Thus, Mr. Gipson's *pro se* status is not a result of his lack of funds, as he falsely stated to the Court, but rather a biproduct of the indefensible nature of Mr. Gipson's conduct.

Moreover, while Mr. Gipson has represented to the Court that he has no funds, the record evidence says otherwise. Indeed, Mr. Gipson testified during the June 14, 2023 hearing that he has spent years traveling the world as a renowned photographer, purportedly helping young Asian sex workers overcome their status through his photography and financial support. *See* June 14, 2023 Hr. Tr. at 48-49. Mr. Gipson also testified that he met Plaintiff on an escort dating website, and had intercourse with Plaintiff "in the Versace mansion in Donatella's suite, in Donatella's bed was the first time. It was memorable." *Id*. at 36.[2] And as discussed in the declaration of Plaintiff filed along with the Complaint, when Plaintiff expressed concern about Mr. Gipson sharing her intimate images, his response was "[i]f I do post them, sue me! I have millions." Dkt. 3 (Sealed Complaint) at ¶ 18.

Indeed, numerous additional victims have come forward to contact Plaintiff's counsel since Plaintiff's filing of the present lawsuit, with each victim telling an eerily similar story of Mr. Gipson's abuse, including his representations that he is a "millionaire," his offers to take the women on trips to Europe, and his subsequent harassment and threats against them when they try

---

[2] This testimony is false, but demonstrates Mr. Gipson's contradictory statements regarding his financial means.

5

to cut contact. For example, Mr. Gipson created a fake "fan" page of another young Asian woman, claiming that she was a sex worker and a thief after she refused to see him (just like he did for Plaintiff):



*See, e.g.,* https://www.instagram.com/p/CpMbND2OAe5/. As shown above, the Instagram page Mr. Gipson created to harass this other young Asian woman is similar to the pages Mr. Gipson made to harass Plaintiff. This profile includes his face in multiple photos, and claims that he is a "Millionaire" who paid for her vacations:

In short, Mr. Gipson's advertises himself to the public as a wealthy businessman and photographer (as part of his persona to attract young women to exploit), while simultaneously representing to this Court that he is a poor and helpless *pro se* defendant. While it is clear that **nothing** Mr. Gipson says can be trusted, Mr. Gipson's inconsistent statements regarding his financial means (and reasoning for not having formal attorney representation) should be disregarded, and he should be given no leniency due to his *pro se* litigant status.

C.   **Mr. Gipson's Motion(s) to Disclose Plaintiff' Real Name Should Be Denied**

Even if Mr. Gipson had not already willfully abandoned his right to file the subject motions and pleadings, Mr. Gipson's Motion to Dismiss Plaintiff's Real Name should be denied. As an initial matter, Mr. Gipson has filed a motion seeking this same relief **four times**. *See* Dkts 36, 40, 49, and 59. As discussed in Plaintiff's motion for clarification (Dkt. 54), Mr. Gipson's first motion was stricken by the Court, and the clerk entered a deficiency notice against Mr. Gipson's second filing. *See, e.g.*, Dkts. 54-2 (text order striking Dkt. 36), 54-3 (June 14 deficiency notice). Regardless, because it is unclear which of Mr. Gipson's serial filings have been accepted by the Court and require a response, Plaintiff provides the present opposition to Mr. Gipson's motion to disclose Plaintiff's real name out of an abundance of caution.

As this Court has already held, "[t]he facts here present a case where anonymity is justified. Plaintiff's claims involve quintessentially private matters—namely the alleged unlawful disclosure of Plaintiff's sexually explicit photographs and videos without her consent." Dkt. 14 at 3. As the Court explained, "the complaint contains sufficient detail to alert the Defendant about the circumstances supporting Plaintiff's claims, and Plaintiff contacted Defendant multiple times seeking to resolve these issues before filing this suit." *Id*. Moreover, the need for anonymity has only *increased* since the Court's order. As discussed in Plaintiff's second application for an emergency TRO, in retaliation for filing this lawsuit Mr. Gipson created at least **fifteen** websites

7

dedicated to uploading over ***four-hundred*** of her sexually explicit photographs.  Dkt. 29-1 (Second TRO).  Thus, Mr. Gipson's continued misconduct confirms that the Court's original order should remain in effect, as "Plaintiff is entitled to proceed under a pseudonym to protect her from potential humiliation and psychological harm due to the private nature of the allegations."  Dkt. 14 at 3.

Nor do Mr. Gipson's motions to disclose Plaintiff's real name provide any legal or factual bases for the Court to reverse course.  Indeed, Mr. Gipson's motion does not contest that the lawsuit implicates "quintessentially private matters" for Plaintiff.  Instead, Mr. Gipson argues that disclosure of Plaintiff's real name is necessary because: i) Plaintiff should purportedly face the same level of scrutiny as Mr. Gipson; ii) Mr. Gipson is counter-suing for defamation;  iii) the photographs were purportedly taken and shared with consent; and iv) Plaintiff's "aliases in her professional life" demonstrates Plaintiff's "willingness to adopt false identities."  *See, e.g.*, Dkt 40 at 1-3.

But each of these arguments are legally and factually erroneous.  First, the fact that Mr. Gipson is facing scrutiny for his systematic harassment and exploitation of young Asian women does not mean that Mr. Gipson's victims must be humiliated further during this civil process.  *See Doe v. CoreCivic, Inc.*, N. 4:20-CV-01828, 2020 WL 3640058, at *1 (S.D. Tex. July 6, 2020) (recognizing that "ex parte motions [to proceed under pseudonym] are appropriate" when a plaintiff seeks to "protect herself from harassment, physical harm, ridicule, and personal embarrassment.").  Second, Plaintiff proceeding by pseudonym has no impact on Mr. Gipson's counter-suit for defamation, as the Court recognized that "Defendant is aware of Plaintiff's identity and of the identities of the witnesses."  Dkt. 14 at 3.  Third, as discussed in Plaintiff's motion to strike, Mr. Gipson absolutely did not have consent to distribute and sell Plaintiff's nude photographs, and Mr. Gipson's purported "Model Release Form" is a forgery.  *See* Dkt. 45-2

(Motion to Strike) at *passim*. Finally, Mr. Gipson offered zero evidence to support his allegations that Plaintiff has "aliases in her professional life" and is "willing[] to adopt false identities." Mr. Gipson attached no declaration to his motion for disclosure, and cited to no exhibit or document to support these bald allegations. As discussed in Plaintiff's Complaint, as well as her two motions for emergency TROs, and motion to strike, Plaintiff is ***not*** a sex worker as Mr. Gipson alleges. Plaintiff is a graduate student who was targeted by Mr. Gipson for exploitation, as part of his pattern of targeting young Asian women. *See, e.g.,* Dkt. 45-2 (Motion to Strike) at *passim*.

In short, Mr. Gipson does not have the legal right to seek the relief he has requested here because he is already in Default, and even if he did have a right to seek this relief, he has provided no cogent reason why the Court's prior order should be reversed – and indeed his actions during this litigation have only compounded the need to maintain Plaintiff's anonymity.

### D.     Mr. Gipson's Motion to Dismiss for Improper Jurisdiction Should Be Denied

Like Mr. Gipson's other motions and pleadings, Mr. Gipson's motion to dismiss for improper jurisdiction should be denied because Mr. Gipson abandoned his right to file the subject motions and pleadings due to his willful Default in this case. Moreover, Mr. Gipson's June 13, 2023 filing was deemed deficient by the clerk of the Court for, among other things, failure to include a signature. *See* Dkt. 54-3 (June 14 deficiency notice).

Regardless, even if Mr. Gipson's filing was not deficient, Mr. Gipson provides no legal or factual basis for dismissal, and raised no issues with the Court's jurisdiction in this case. Indeed, Mr. Gipson's filing merely claims that he "was not in the United States during the timeframe that is the basis of this lawsuit." Dkt. 37 at 1. But this is irrelevant to the jurisdictional analysis. As stated in Plaintiff's Complaint, Jurisdiction is conferred on this Court based upon 28 U.S.C. § 1331 (federal question jurisdiction); jurisdiction is further proper in this Court under 28 U.S.C. § 1332(a) (diversity jurisdiction) because Plaintiff is a citizen of Florida, Mr. Gipson is a citizen of Texas,

9

and the amount in controversy exceeds $75,000. Dkt. 3 at 6. Moreover, the Court has jurisdiction over Mr. Gipson under Tex. Civ. Prac. & Rem. Code § 98B.006.

Finally, at the June 14, 2023 preliminary injunction hearing Mr. Gipson verbally requested "a dismissal based on jurisdiction, based on the fact that [he] was not in the United States during the timeframe that is the basis of this lawsuit." June 14, 2023 Hr. Tr. at 5. The Court overruled Mr. Gipson's request because it did not find "that that's a basis for dismissal" or identify "any issue with the Court's jurisdiction in this case." *Id*. Thus, the Court has already addressed the substance of Mr. Gipson's motion, finding it without merit.

### E. Mr. Gipson's Motion(s) to Contest Emergency TRO And Counter Motion For A Preliminary Injunction Against Plaintiff Should Be Denied

Like Mr. Gipson's other motions and pleadings, Mr. Gipson's motion(s) to contest the emergency TROs and counter-motion for a preliminary injunction against Plaintiff should be denied because Mr. Gipson abandoned his right to file the subject motions and pleadings due to his willful Default in this case. As an initial matter, Mr. Gipson has filed a motion seeking this same relief ***three times***. *See* Dkts 43, 46, 57. As discussed in Plaintiff's motion for clarification (Dkt. 54), the clerk entered a deficiency notice against Mr. Gipson's first filing. *See, e.g.*, Dkt. 54-3 (June 14 deficiency notice). However Mr. Gipson re-filed his motion without correcting the deficiencies, ultimately filing his second motion to contest the TROs without any signature and without any supporting factual declarations. *See* Dkt. 46. Moreover, each of Mr. Gipson's motions are ***over 100 pages long***. *See* Dkts 43, 46, 57.

Regardless, even if Mr. Gipson was not already in Default, and even if Mr. Gipson's filings were not facially deficient, Mr. Gipson's motion(s) to contest the emergency TROs and counter-motion(s) for a preliminary injunction against Plaintiff should be denied. With respect to Mr. Gipson's motion(s) to contest the emergency TROs, Mr. Gipson's motion(s) fail to address the

preliminary injunction standard and fail to explain why that standard has not been satisfied. As the Court has already found:

> Plaintiff has offered specific facts in an affidavit clearly showing that immediate and irreparable injury, loss, or damage will result to Plaintiff. The Court finds a substantial risk of irreparable harm to Plaintiff, and to the jurisdiction of this Court, if Defendant Mark A. Gipson were allowed to continue disclosing Plaintiff's intimate visual materials, impersonate her on social media, and contact her friends, family, and/or associates. In contrast to the substantial, irreparable harm to Plaintiff, any potential harm to Defendant Mark A. Gipson in ceasing such conduct is minimal and reparable.

Dkt. 31 at 1.

Mr. Gipson's motion(s) to contest the emergency TROs offer no legal or factual bases for the Court to reverse course. Indeed, Mr. Gipson failed to provide any sworn declaration or evidence supporting his wild and baseless accusations, beyond a forged "Model Release Form." *See, e.g.,* Dkt. 45-2 (Motion to Strike) at *passim* (discussing Mr. Gipson's falsification of evidence and forgery, and attaching sworn declarations with Plaintiff's real handwriting and signature confirming the Model Release Form was a forgery). As discussed in Plaintiff's Motion to Strike, Mr. Gipson's falsified evidence should be stricken, and a full preliminary injunction should be issued against Mr. Gipson.

With respect to Mr. Gipson's request for a preliminary injunction against Plaintiff, once again Mr. Gipson's motion(s) fail to address the preliminary injunction standard and fail to explain why that standard has been satisfied. Instead, Mr. Gipson's motion(s) walk through a myriad of salacious and obviously false defamatory statements against Plaintiff, once again claiming that she is a sex worker, and that all of the actions Mr. Gipson took against her were with her consent. *See, e.g.*, Dkt. 43 at 99-107. But once again, Mr. Gipson failed to provide any sworn declaration or evidence supporting his wild and baseless accusations, beyond a forged "Model Release Form." *Id.* Mr. Gipson's request for a preliminary injunction against Plaintiff should thus be denied.

11

### F.     Mr. Gipson's Motion for Opinion on AI Artwork Should Be Denied

Finally, like Mr. Gipson's other motions and pleadings, Mr. Gipson's motion for an opinion on AI artwork (Dkt. 39) should be denied because Mr. Gipson abandoned his right to file the subject motions and pleadings due to his willful Default in this case. Moreover, Mr. Gipson's June 13, 2023 filing was deemed deficient by the clerk of the Court for, among other things, failure to include a signature. *See* Dkt. 54-3 (June 14 deficiency notice). Regardless, even if Mr. Gipson was not already in Default, and even if Mr. Gipson's filings were not facially deficient, Mr. Gipson's motion for an opinion on AI artwork should be denied as requesting an advisory opinion on an issue not relevant to any claim or defense in this case – there is no "copyright" or "AI artwork" exception to the Federal Revenge Porn statute, or any of the other numerous civil or criminal statutes Mr. Gipson has violated. *See, e.g.*, *Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113–114 (1948) ("This Court early and wisely determined that it would not give advisory opinion.").

### III.    CONCLUSION

Plaintiff respectfully requests Court deny Defendant's requested relief.

Dated: June 27, 2023                                Respectfully Submitted,

                                                    *S. Giri Pathmanaban*

                                                    S. Giri Pathmanaban (TSB#: 24074865)
                                                    LATHAM & WATKINS LLP
                                                    300 Colorado Street
                                                    Suite 2400
                                                    Austin, TX  78701
                                                    Telephone:  (737) 910-7300
                                                    Facsimile:  (737) 910-7301
                                                    giri.pathmanaban@lw.com

12

>Bradley A. Hyde (*pro hac vice*)
>Kevin M. Hamilton (*pro hac vice*)
>Caitlyn L. Brock
>LATHAM & WATKINS LLP
>650 Town Center Drive
>Suite 2000
>Costa Mesa, CA  92626-1925
>Telephone:  (714) 540-1235
>Facsimile:  (714) 755-8290
>bradley.hyde@lw.com
>kevin.hamilton@lw.com
>caitlyn.brock@lw.com
>
>ATTORNEYS FOR Plaintiff
>JANE DOE

## CERTIFICATE OF SERVICE

I hereby affirm that on June 27, 2023, a true and correct copy of the foregoing document was served by electronic service pursuant to the Federal Rules of Civil Procedure with the Court's CM/ECF electronic filing system.  Additionally, paper copies were sent via regular mail, and a copy of the respective pleading was served to Mr. Gipson's email address.


Dated: June 27, 2023                                  *S. Giri Pathmanaban*
                                                      S. Giri Pathmanaban

13