IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:23-CV-463-RP |
| | § | |
| MARK A. GIPSON, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are several post-trial matters: Plaintiff Jane Doe's ("Plaintiff") Motion for Judgment as a Matter of Law, (Dkt. 260), Motion for Entry of Judgment, (Dkt. 273), and Motion for Entry of a Permanent Injunction, (Dkt. 278), and Defendant Mark Gipson's ("Defendant") Motion for New Trial, (Dkt. 274), and the related briefing, (Dkts. 261, 264, 275, 276, 277, 281).

## I. BACKGROUND

This is a case involving the distribution of intimate visual material that proceeded to a jury trial on April 21, 2025, to April 23, 2025. Plaintiff brought claims for unauthorized disclosure of intimate images under the Violence Against Women Reauthorization Act (VAWRA), 15 U.S.C. § 6851, and Texas Civil Practice and Remedies Code § 98B, along with claims of intentional infliction of emotional distress and negligence per se via online impersonation. (Compl, Dkt. 1, at 33–53). The jury found Defendant liable on all Plaintiff's claims and awarded Plaintiff $50,000 in economic damages and $250,000 in non-economic damages.[1] (Dkt. 258). The jury also found Defendant conducted himself with malice or reckless indifference to the rights of others and awarded Plaintiff $2,000,000 in punitive damages. (*Id.*). Plaintiff now asks the Court to enter

---

[1] The jury awarded damages for Plaintiff's claims of disclosure of intimate visual material under the Texas statute, intentional infliction of emotional distress, and negligence per se only. (Dkt. 258, at 5). Plaintiff pled statutory damages for her claim under 15 U.S.C. § 6851. (Compl., Dkt. 1, at 33–40).

1

judgment as well as a permanent injunction. (Dkts. 273, 278). Defendant moves for a new trial. (Dkt. 274).

## II. LEGAL STANDARDS

### A. Motion for New Trial

Courts may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Although Rule 59 does not specifically enumerate the grounds for a new trial, the Fifth Circuit has found that a new trial is appropriate where: (1) the verdict is against the weight of the evidence, (2) the amount of damages awarded is excessive, or (3) the trial was unfair or marred by prejudicial error. *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial. Ultimately the motion invokes the sound discretion of the trial court[.]" *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2803 (3d ed. 1973)).

### B. Permanent Injunction

"[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). "Where express authority for issuance of statutory injunctions is provided by legislative enactment, an injunction may issue without resort to the traditional 'equitable' prerequisites of such relief, so long as the statutory

conditions are met." *CSC Holdings, Inc. v. New Info. Techs., Inc.*, 148 F. Supp. 2d 755, 763 (N.D. Tex. 2001); *see also Griffin v. O'Brien, Wexler, & Assocs.*, LLC, 680 F. Supp. 3d 772, 790 (E.D. Tex. 2023) ("[A]s the Supreme Court of Texas has previously held, when an injunction is authorized by statute, the district court is authorized to issue an injunction based exclusively on a determination that the statute has been violated.").

### III. DISCUSSION

#### A. Motion for a New Trial

Defendant argues that "irreparable prejudice was introduced into the jury pool when a prospective juror, in open court and over the courtroom's audio system, publicly stated that the Defendant had prior criminal charges relating to this case," and that "the contamination was compounded" by a comment made by a court security officer off the record. (Dkt. 274, at 1). He argues the comments tainted the jury and therefore the Court should grant a new trial. (*Id.* at 3–7). The comments Defendant references occurred during *voir dire*. The Court asked the prospective jurors, "Have any of you ever read anything about this case in the newspapers or online? Or have you ever heard anything about it on radio or in conversations with others or seen anything on television about it?" (Tr. Vol. 1, 21:10–13). In response, Venireperson 47 said, "Well, I've read the Statesman article back in 2012 when there were originally criminal proceedings happening or when he was originally being charged, but that's about it." (*Id.* at 21:22–25). The Court then instructed the panel "not to look to any outside source about the case. Not to look to the court's documents, not to read any pleadings in the case . . . since it was brought up by one of the members of the panel, we'll have more thorough instructions on that. But I want to be clear at this time that that's not something that anyone may do." (*Id.* at 22:3–9). When the Court asked if Venireperson 47 had formed any opinion about any of the issues in the case based on his research, he said "yes," and nothing more. (*Id.* at 22:19–23:1). The Court proceeded with questioning the panel. (*See id.* at 23:2).

Later, the Court and counsel conferred at a bench conference. (*Id.* at 37:15–43:8). The parties agreed Venireperson 47 should be struck for cause. (*Id.* at 38:9–18). The Court took a recess and excused Venireperson 47 outside the presence of the rest of the panel. (*Id.* at 43:22–44:3). After the recess, the Court and counsel conferred again at the bench. (*See id.* at 43:23–24). The parties informed the Court that during the recess, a comment by the court security officer was picked up by a courtroom microphone but was not on the record. The parties agreed he said something about telling someone to "hit the road," and the parties agreed he was referencing Venireperson 47, but otherwise disagreed on exactly what was heard by the jury panel. (*Id.* at 44:23–45:24). The Court denied Defendant's motion to declare a mistrial. (*Id.* at 44:12–18).

At the end of *voir dire*, the Court issued another instruction to the panel: "Anything the attorneys or members of the jury panel said during jury selection is not evidence. Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom." (*Id.* at 100:9–12). Before opening statements, the Court instructed, "[Y]ou may not research any information about this case . . . The reason for these cautions lies in the fact that it will be your duty to decide this case solely on the basis of the testimony and evidence presented during trial without consideration of any other matter." (*Id.* at 123:11–18). Before the jury's deliberations, the Court again instructed the jury, "Additionally, I remind you that anything you may have seen or heard during this trial other than testimony from witnesses and exhibits admitted into evidence should be disregarded." (Tr. Vol. 3, at 120:2–5).

The Court finds that neither Venireperson 47's nor the court security officer's comments introduced prejudicial error that warrants granting a new trial. "[S]tatements made by prospective jurors during voir dire 'indicating actual or media-based knowledge' of a defendant are 'grist for the mill of any voir dire inquiry . . .' Requiring the court inflexibly to start over again with a new venire panel every time—regardless of the nature, credibility, brevity, or volume of the statement—is a

4

'burden [that] cannot be placed upon the . . . selection of a jury.'" *United States v. Pendleton*, 832 F.3d 934, 945 (8th Cir. 2016) (quoting *United States v. Doggett*, 821 F.2d 1049, 1051 (5th Cir. 1987) (alterations in original)). Here, both comments were brief and vague, containing little or no substantive information. *See United States v. Castello*, 526 F. Supp. 847, 850 (W.D. Tex. 1981) (considering such characteristics of extrinsic material received by the jury to weigh the potential prejudice introduced) (citing *Paz v. United States*, 462 F.2d 740, 746 (5th Cir. 1972)). Further, the court security officer was not in the courtroom when his comment was picked up by the microphone; it is not clear that the jury panel heard the comment at all or would have known who he was referencing.

The article Venireperson 47 referenced is not related to this case; it concerns an entirely separate legal matter Defendant was involved in, over a decade prior.[2] And Venireperson 47 was released as soon as was practicable, outside the presence of the panel so as to not draw attention to his statements. Then, the Court instructed the jury at least four times throughout trial to disregard anything other than the evidence presented during the trial, and specifically instructed, "Anything the attorneys or members of the jury panel said during jury selection is not evidence." (Tr. Vol. 1, at 100:9–12). Defendant presents no evidence that the jury disobeyed the Court's instructions, nor does he present evidence that either comment influenced the jury's decision-making. Having assessed the nature and brevity of the comments and finding no harmful error, the Court denies Defendant's motion for a new trial.

### B.  Permanent Injunction

Plaintiff moves for a permanent injunction, the specifics of which she organizes into three categories: "(1) ensure the removal of intimate images of Plaintiff posted online, (2) prevent future

---

[2] Julie Chang, *Man charged with online impersonation of sisters,* AUSTIN AMERICAN-STATESMAN (Oct. 30, 2013), https://www.statesman.com/story/news/2013/10/30/man-charged-with-online-impersonation/6687551007/ters.

extreme and outrageous conduct by Defendant against Ms. Doe, and (3) prevent Defendant from transferring/restructuring assets to avoid paying damages." (Dkt. 278, at 2). Plaintiff asks the Court to enjoin Defendant from specific conduct in each category. (*Id.* at 3–9). Having reviewed Plaintiff's requests, Defendant's response, and the relevant law, the Court will grant in part and deny in part Plaintiff's requests.

First, the jury found Defendant violated both the federal and Texas statutes regarding disclosure of intimate images. (Dkt. 258). Both statutes authorize a court to issue a permanent injunction to cease the display of intimate images. 15 U.S.C. § 6851(b)(3)(A)(ii); Tex. Civ. Prac. & Rem. Code § 98B.004. Because an injunction is authorized by statute, an analysis of the four-factor test is not required for the Court to grant this portion of Plaintiff's request. *CSC Holdings,* 148 F. Supp. 2d at 763. Accordingly, the Court will order Defendant to remove any intimate visual depictions of Plaintiff currently on display and order him to not display these images in the future.

Second, Plaintiff requests a permanent injunction that prevents "Defendant from engaging in extreme and outrageous conduct." Specifically, Plaintiff requests:

- Ordering Defendant not to intentionally disclose any false, defamatory, humiliating, or derogatory depictions of or representations about Plaintiff to Plaintiff's family, co-workers, supervisors, employers, work associates, friends, or social acquaintances.

- Ordering Defendant not to create any social media accounts or websites using Plaintiff's name or persona.

- Ordering Defendant not to contact any of Plaintiff's family, co-workers, supervisors, employers, work associates, or friends.

- Barring Defendant from contacting, directly or indirectly, or coming within 1,000 feet of Plaintiff or any member of Plaintiff's family.

(Dkt. 278, at 5–6).

The Court finds Plaintiff has satisfied the four-factor test for an injunction. First, the evidence at trial demonstrated that Defendant's conduct, malicious harassment that spanned

6

months, indicates there is a likelihood of future violative conduct. (*See e.g.*, Joint Ex. 11, Joint Ex. 29). The evidence also demonstrated that Defendant's conduct has caused Plaintiff extreme emotional distress which monetary damages alone cannot adequately compensate. (Tr. Vol. 1, at 186: 8–10). Preventing Defendant from impersonating Plaintiff and from threatening and harassing her does not place a hardship on Defendant, nor does it disserve the public interest.

But, the scope of the injunctive relief is dictated by the extent of the violation established, and the district court must narrowly tailor an injunction to remedy the specific action which gives rise to the order. *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). The Court finds that some of Plaintiff's requested injunction falls within the scope of this action, while others are not narrowly tailored.

Relevant to this category of Plaintiff's requests, the jury found that Defendant was liable for intentional infliction of emotional distress and negligence per se for his online impersonation of Plaintiff. (Dkt. 258). The evidence showed that Defendant's intentional infliction of emotional distress was inflicted in large part through harassing phone calls, emails, and text messages to Plaintiff. (*See e.g.*, Joint Ex. 29). Courts do have the power to enjoin harassing communication. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005). And where the "cantankerous relationship between [the] parties is evidently clear from the record," an injunction prohibiting threats and harassment is justified and does not operate as a prior restraint on Defendant's speech, (*id.*), as Defendant argues, (Dkt. 277, at 2). Here, the record is replete with evidence of Defendant's malice for Plaintiff. (*See e.g.*, Joint Ex. 11, Joint Ex. 29). Therefore, an injunction preventing Defendant from threatening and harassing Plaintiff is justified. And, as the jury found Defendant liable for online impersonation of Plaintiff, an injunction barring Defendant from maintaining social media accounts in Plaintiff's name is also appropriately tailored.

However, the Court cannot grant Plaintiff's request in full insofar as Plaintiff's request reaches all of Defendant's communications with Plaintiff's "family, co-workers, supervisors, employers, work associates, friends, or social acquaintances." (Dkt. 278, at 6). These categories of people are broad, undefined, and not narrowly tailored to the claims at issue. And a court risks "sweep[ing] too broadly when it prohibit[s] all communication," rather than tailoring the injunction to threats and harassment. *Test Masters Educ. Servs.*, 428 F.3d at 580.

Third, Plaintiff requests the Court enjoin Defendant from transferring assets to avoid satisfying the judgment. (Dkt. 278, at 8–9). District courts have the power to enforce their judgments through injunctions. *Thomas v. Hughes*, 27 F.4th 363, 368 (5th Cir. 2022). When restricting the transfer of assets to do so, the district court does not abuse its discretion when the record supports a likelihood that the defendant will indeed transfer assets to evade the judgment. *Id.* at 369. Here, Plaintiff presents evidence that Defendant intends to evade the judgment. In an email to Plaintiff, Defendant threatens, "Keep in mind that all my crypto assets are untouchable so if ur thinking you can sue me over this remember that even if you do win, you will get nothing." (Dkt. 278-3). Considering this evidence, an injunction preventing Defendant from transferring assets is appropriate. Accordingly, the Court will enter a permanent injunction in the final judgment order.

### C.  Judgment as a Matter of Law

Prior to the jury's verdict, Plaintiff had informed the Court she was moving for judgment as a matter of law on all of her claims, and that she would file a written motion with the Court. (Tr. Vol. 3, at 106:10–16). The Court denied Plaintiff's motion on the record, without prejudice to re-urging. (*Id.* at 106:17–19). Plaintiff filed her written motion after the jury delivered its verdict. (Dkt. 260). Defendant responded in opposition, (Dkt. 261), but Plaintiff clarifies that this is the motion the Court already denied, (Dkt. 264, at 1). Plaintiff explains she subsequently filed the written version as she told the Court she would. (*Id.*). Therefore, another ruling on this motion is

8

unnecessary. It has already been denied, (Tr. Vol. 3, at 106:17–19), and Plaintiff does not re-urge her motion in light of the jury's verdict finding she prevailed on all of her claims, (Dkt. 264, at 1).

### D. Entry of Final Judgment

Plaintiff moves for entry of final judgment. (Dkt. 273). Defendant did not respond in opposition. The Court finds no reason to deny entry of final judgment, and it will enter final judgment in a separate order.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant's Motion for New Trial, (Dkt. 274), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Entry of Judgment (Dkt. 273), is **GRANTED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Permanent Injunction, (Dkt. 278), is **GRANTED IN PART AND DENIED IN PART**.

The Court will enter final judgment, including the permanent injunction, by separate order.

**SIGNED** on July 14, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE